## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **MARY VANN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | )     **No. 4:19-CV-01414-PLC** |
| | ) |
| **ANDREW M. SAUL,** [1] | ) |
| Commissioner of Social Security | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Mary Vann seeks review of the decision of Defendant Social Security Commissioner Andrew Saul denying her application for Disability Insurance Benefits (DIB) under the Social Security Act.  For the reasons set forth below, the Court affirms the Commissioner's decision.

### I.    Background & Procedural History

On May 31, 2016, Plaintiff filed an application for DIB, alleging disability beginning August 1, 2012[2] due to:  "rheumatoid arthritis in the hands, neck, back, and knees; 3 fractured vertebrae; fibromyalgia; bulging disc; sciatic nerve; anxiety; depression; and high blood pressure." (Tr. 145, 200)  The Social Security Administration (SSA) denied Plaintiff's claims, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge (ALJ), which the SSA granted.  (Tr. 75, 88)

---

[1] At the time this case was filed Nancy A. Berryhill was the Deputy Commissioner of Social Security.

[2] Plaintiff later amended the alleged onset date of disability to December 31, 2014.  (Tr. 161)

An ALJ conducted a hearing in May 2018, at which Plaintiff and a vocational expert testified. (Tr. 33)  In a decision dated October 3, 2018, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 31, 2014, through the date of this decision." (Tr. 28)  The SSA denied Plaintiff's subsequent request for review of the ALJ's decision. (Tr. 1-6)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision.  Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.    Evidence before the ALJ[3]

### A.  Testimony at the ALJ Hearing

Plaintiff testified that she was fifty years old, had an eleventh-grade education, and last worked on December 31, 2014. (Tr. 41)  Plaintiff previously worked as an ironworker for construction companies and a packer at warehouses. (Tr. 41-46)  In the ironwork positions, Plaintiff's work required her to carry and lay mesh, tie rebar, place and tighten bolts, and regularly lift between twenty and fifty pounds. Id.

Plaintiff testified that her ability to perform everyday activities was limited by back and hip pain, arthritis, fibromyalgia, and sciatica. (Tr. 47)  Plaintiff described "shooting pains" in her hips, which prevented her from sleeping more than three hours a night. (Id.)  Plaintiff stated that, as a result of arthritis in both hands, she could not grasp and could "hardly open anything with them." (Id.)  The pain in Plaintiff's hands extended from her wrists through her fingers. (Tr. 52)

Plaintiff presented a list of her current medications, which included oxycodone, duloxetine, Celebrex, Plaquenil, methotrexate, Lisinopril, folic acid, and vitamin D. (Tr. 47-48, 261)  Plaintiff testified that her medications caused drowsiness, constipation, and poor concentration. (Tr. 48)

---

[3] Because Plaintiff does not challenge the ALJ's determination of his mental RFC, the Court limits its discussion to the evidence relating to Plaintiff's physical impairments.

Plaintiff estimated that she could lift "maybe five" pounds and stand for forty-five minutes on a good day, which she had "maybe two days a week," and fifteen minutes on a bad day.  (Tr. 48)  Plaintiff testified that she could walk "about a block" and sit for thirty to forty-five minutes at a time before needing to lie down.  (Tr. 48-49, 51)

In regard to household chores, Plaintiff stated that she could "maybe dust[], but I can't bend over and do anything, any cleaning…. Because it hurts.  It hurts my lower back, my hands. I can't hardly use my hands anymore."  (Tr. 49)  Plaintiff did not cook, but rather prepared sandwiches and "microwave food."  (Tr. 54)  Plaintiff was able to wash dishes, "but if it's a lot of dishes, then I can probably only do half the dishes and then I have to go sit down…."  (Tr. 52) Plaintiff had difficulty brushing her hair and was unable to do buttons and zippers.  (Tr. 53) Plaintiff testified that, on a typical day, she would lie down for two hours at a time for a total of four hours due to fatigue and pain.  (Tr. 50)  About once a week, Plaintiff would drive seven miles to the grocery store, where she would shop for "about 10 minutes."  (Tr. 40)  Plaintiff stated that, as a result of her pain, she was unable to concentrate on movies or reading materials.  (Tr. 51-52)

A vocational expert also testified at the hearing.  (Tr. 57-62)  The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and past work experience with the following limitations:

> This hypothetical individual can lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently.  This hypothetical individual can stand and walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks.  This hypothetical individual can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds.  This hypothetical individual can occasionally balance, stoop, kneel, crouch and crawl.  This hypothetical individual should avoid concentrated exposure to extreme cold and excessive vibration.  This hypothetical individual should avoid moderate exposure to operation or control of moving machinery and exposure to hazardous machinery. This hypothetical individual should avoid unprotected heights.  This hypothetical individual's work is limited to simple, routine and repetitive tasks.

(Tr. 58)  The vocational expert testified that such an individual could not perform Plaintiff's past relevant work but could perform other jobs that existed in significant numbers in the national economy, such as retail clerk, dining attendant, and fast food worker.  (Tr. 59)  When the ALJ limited the hypothetical individual to sedentary work, the vocational expert stated that the individual could perform the jobs of ticket taker, optical goods assembler, and touch-up circuit board worker.  (Tr. 59-60)  The vocational expert stated that those jobs would remain available to the hypothetical individual if the ALJ added a limitation to frequent reaching using bilateral upper extremities.  (Tr. 60)  However, if the individual could only reach occasionally in all directions, she would not be able to maintain competitive employment.  (Tr. 60-61)

### B.  Relevant Medical Records

In early July 2013, Plaintiff visited Dr. Shah, complaining of pain in her back, neck, and elbows that affected her sleep, activities of daily living, and pleasure activities.  (Tr. 267)  She rated this pain as a ten on a ten-point scale.  (Id.)  According to the visit summary, Plaintiff had prescriptions for alprazolam for anxiety, acetaminophen-oxycodone and tramadol hydrochloride for breakthrough pain, and morphine for chronic pain.  (Tr. 267)

Plaintiff returned to Dr. Shah's office later that month, complaining of swelling in her hands and tenderness, spasms, and stiffness in her posterior neck.  (Tr. 270)  In September 2013, in addition to a continued tenderness and spasms in her neck, Plaintiff complained that her arms had been hurting and waking her up in the middle of the night.  (Tr. 274)  Dr. Shah prescribed ibuprofen 800 mg three time per day and did not refill the tramadol hydrochloride.  (Id.)  One month later, Plaintiff returned to Dr. Shah, reporting that her pain had increased despite the medications.  (Tr. 275)  Dr. Shah prescribed tizanidine and ordered MRIs.  (Id.)

Plaintiff's cervical MRI of November 2013 revealed "C5-6 narrowing and right protrusion and spur encroaching on the neural foramen" and "C6-7 Modic [sic] edema and left neural foraminal spurring and possibly small extrusion encroaching on the neural foramen." (Tr. 280-81)   A lumbar spine MRI revealed "mild L5-S1 degenerative changes," but was otherwise unremarkable.  (Tr. 282)   When Plaintiff met with Dr. Shah later that month, her pain was unchanged and she reported no side effects from her medications.  (Tr. 278)

Plaintiff established care with rheumatologist Dr. Sanjay Ghosh in late November 2013. (Tr. 457)  At this visit, Plaintiff complained of "moderate dull pain in the low back radiating to right leg."  (Id.)  Plaintiff reported that the pain was "increased by bending and stooping" and "decreased by nothing."  (Id.)  Dr. Ghosh assessed Plaintiff with sciatica and cervicalgia, noted 2+ tenderness in the lumbar spine, and continued Plaintiff's morphine sulfate, oxycodone-acetaminophen, and lisinopril.  (Tr. 458-59)

Plaintiff returned to Dr. Ghosh's office in December 2013, and Dr. Ghosh performed a cervical epidural nerve block and assessed brachial neuritis or radiculitis NOS.  (Tr. 401)   At Plaintiff's request, Dr. Ghosh discontinued her morphine and prescribed tramadol.  (Tr. 402) When Plaintiff followed up with Dr. Ghosh in March 2014, she complained of "moderate pain in the low back radiating to right leg," but reported that her neck pain was "better."  (Tr. 425)  On examination, Dr. Ghosh observed mild tenderness in the cervical spine, 1+ tenderness in the lumbar spine, and straight leg raising to 90 degrees bilaterally.  (Tr. 426)  Dr. Ghosh continued Plaintiff's oxycodone-acetaminophen, tramadol, alprazolam, and lisinopril.  (Tr. 426-27)

In response to Plaintiff's complaints of severe sciatic pain, Dr. Ghosh administered lumbar epidural nerve blocks on April 9 and 28, 2014.  (Tr. 405, 407)  In mid-May 2014, Plaintiff reported that the injections had reduced the pain in her lower back, but complained of neck pain radiating

to both arms. (Tr. 408) Dr. Ghosh performed a cervical epidural nerve block.  (Tr. 409)  When Plaintiff returned to Dr Ghosh two weeks later, she stated that the pain in her neck was improved. (Tr. 412)  Plaintiff again complained of moderate dull pain in the low back, which was increased by exertion and decreased by pain medication.   (Tr. 411)   Dr. Ghosh increased Plaintiff's oxycodone-acetaminophen and tramadol.  (Id.)

In August and October 2014, Plaintiff complained to Dr. Ghosh of moderate pain in the low back radiating to the right leg, and he noted 1+ tenderness in the lumbar spine and straight leg raising to 90 degrees bilaterally.  (Tr. 414-15, 417)  Plaintiff's condition worsened in January 2015 after a near fall, during which she "jerked her back" causing "severe pain in low back radiating to right leg.  Having difficulty walking."  (Tr. 423)  On examination, Dr. Ghosh observed  2+ tenderness in the lumbar spine and a straight leg raise of 60 degrees on the right and 90 degrees on the left.[4]  (Tr. 423)  Dr. Ghosh administered a lumbar epidural nerve block and recommended back exercises.  (Tr. 424)

In March 2015, Plaintiff reported that the pain in her neck and mid-back had improved but was still present.  (Tr. 429-30)  Dr. Ghosh noted 1+ tenderness in the lumbar spine and straight leg raising to 90 degrees, and he continued her medication.  (Tr. 430)  At Plaintiff's next appointment in June 2015, Plaintiff continued to complain of moderate pain in the low back radiating to both legs.  (Tr. 431)  Dr. Ghosh examined Plaintiff, noting 2+ tenderness in the lumbar spine, and he changed her medications from oxycodone-acetaminophen to oxycodone.  (Tr. 432-33)

Plaintiff continued to report improvement in her mid-back pain in September 2015, but she complained that her hands hurt, noting "more pain with cleaning job," and she experienced

---

[4] After this appointment, Plaintiff's straight leg raises were consistently 90 degrees bilaterally.  (Tr. 423, 432, 435, 439, 442, 445, 451, 562, 569, 581, 586, 590, 597, 603, 614, 619, 627)

stiffness in the morning that lasted for two hours.  (Tr. 434)  On examination, Dr. Ghosh observed

"1+ tenderness with trace swelling in the MCPs, PIPs, shoulders and ankles, … 12/18 tender points

are present; 1+ tenderness in the lumbar spine…."  (Tr. 435)  Dr. Ghosh assessed inflammatory

arthritis, prescribed hydroxychloroquine sulfate, and continued Plaintiff's oxycodone.  (Tr. 435-

36)  At her next visit, in November 2015, Plaintiff reported that the hydroxychloroquine sulfate

tablets helped her pain, and the duration of her morning stiffness had decreased to thirty minutes.

(Tr. 438)  Dr. Ghosh administered a trigger point injection to Plaintiff's neck for her cervical

radiculitis.  (Tr. 439)

In January 2016, Plaintiff reported moderate dull pain in her neck, shoulders, low back,

and hands, and Dr. Ghosh observed:  1+ tenderness with trace swelling in her MCPs, PIPs, and

wrists; and 1+ tenderness in the cervical and lumbar spine.  (Tr. 442 )  Dr. Ghosh prescribed

methotrexate for Plaintiff's inflammatory polyarthropathy and duloxetine for fibromyalgia, and he

adjusted her dosage of oxycodone from 15mg four times per day to 10 mg every four hours.  (Tr.

443)  When Plaintiff returned in February, she  reported "moderate dull pain in the hands and low

back radiating to the left leg," but stated that her inflammatory polyarthropathy was "better."  (Tr.

444, 446)  Physical examination revealed mild tenderness without swelling in the MCPs and 1+

tenderness in the lumbar spine.  (Tr. 445)

In May and August 2016, Plaintiff reported moderate dull pain in the hands, low back, and

hips, increased by exertion and decreased by her medications.  (Tr. 450, 561)  In November 2016,

Plaintiff continued to complain of moderate dull pain in the neck, right hip, and low back radiating

to right leg, but her "hand[s] and other joints are fine."  (Tr. 568)  On examination, Dr. Ghosh

noted 1+ tenderness at the right lateral hip and cervical and lumbar spine.  (Tr. 569)  Dr. Ghosh

administered a right hip injection, prescribed trazodone for sleep, and continued Plaintiff's methotrexate, hydroxychloroquine, oxycodone, lisinopril, alprazolam, duloxetine. (Tr. 570-71)

At Plaintiff's next appointment with Dr. Ghosh in January 2017, her sciatica pain was worse, but her hands and other joints were "fine." (Tr. 580) Dr. Ghosh noted that Plaintiff's inflammatory polyarthropathy and cervical radiculopathy were well-controlled. (Tr. 581) Dr. Ghosh recorded 1+ tenderness in the lumbar spine, administered a sciatic nerve block, advised Plaintiff not to lift more than five pounds, ordered a lumbar MRI, prescribed Celecoxib, and continued Plaintiff's other medications. (Tr. 581) A lumbar MRI of February 2017 revealed "mild disc degeneration at L5 S1 resulting in mild foraminal narrowing." (Tr. 514)

Plaintiff returned to Dr. Ghosh's office in February 2017 to review the results of her MRI and reported moderate dull pain in her low back radiating to the right leg. (Tr. 584) Dr. Ghosh noted that Plaintiff's hands and other joints were "fine," and examination revealed 1+ tenderness in the lumbar spine. (Tr. 586) Dr. Ghosh continued Plaintiff's medications and recommended neck exercises. (Tr. 587) At Plaintiff's next appointment in May 2017, she reported moderate dull pain in hips and low back radiating to right leg, and examination showed mild tenderness at lateral hips and 1+ tenderness in the lumbar spine. (Tr. 590)

In August 2017, Plaintiff complained to Dr. Ghosh of moderate dull pain in the right elbow and low back radiating to the right leg, as well as tingling in the right little finger. (Tr. 596) On examination, Dr. Ghosh noted 1+ tenderness in the lumbar spine and mild tenderness in the cervical spine. (Tr. 597) He diagnosed cubital tunnel syndrome on the right, administered an injection to the right elbow, prescribed cyclobenzaprine and back exercises, and continued Plaintiff's other medications. (Tr. 599) When Plaintiff returned in November 2017, she continued

to experience moderate dull pain in hips and low back, but her hands and other joints were "fine." (Tr. 603)

At Plaintiff's appointment with Dr. Ghosh in January 2018, she reported "moderate intermittent dull pain in hands and low back." (Tr. 613) On examination, Dr. Ghosh observed mild tenderness without swelling in the MCPs and 1+ tenderness in lumbar spine. (Tr. 614) In March 2018, Plaintiff continued to complain of moderate dull pain in her hands and low back, as well as knees and left hip. (Tr. 618) Physical examination revealed: 1+ tenderness at left lateral hip with normal range of motion; 1+ tenderness without swelling in the knees, wrists, and hand PIPs with normal range of motion; 1+ tenderness in the lumbar spine; and straight leg raise to 90 degrees. (Tr. 619) Dr. Ghosh administered an injection to Plaintiff's left hip, recommended hip exercises, decreased Plaintiff's oxycodone, and continued her other medications. (Id.)

When Plaintiff followed up with Dr. Ghosh in April 2018, her hands and other joints were fine, but she reported moderate dull pain in her neck, right knee, right hip, and low back radiating to right leg. (Tr. 626) On examination, Dr. Ghosh noted: 1+ tenderness without swelling in the right knee; 1+ tenderness at right lateral hip; and 1+ tenderness in the cervical and lumbar spine. (Tr. 627) Dr. Ghosh wrote that Plaintiff's inflammatory polyarthropy was "well controlled," decreased her oxycodone with the plan to "stop oxycodone in 3 months," and continued hydroxychloroquine, methotrexate, celecoxib, lisinopril, duloxetine, and trazadone. (Tr. 628-29).

### III.  Standard for Determining Disability Under the Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period not less than 12 months."  20 C.F.R. § 404.1505(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 404.1520(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted).  At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).

At step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations."  Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  See also 20 C.F.R. § 404.1520(e).  The ALJ also determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).  If the claimant can still perform past relevant work, he or she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  20 C.F.R § 405.1520(g); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).  If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. § 404.1520(g).

**IV.  ALJ's Decision**

In a decision dated October 3, 2018, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520.  (Tr. 16)  The ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since December 31, 2014; and (2) had the severe impairments of anxiety, inflammatory polyarthropathy, fibromyalgia, and lumbar degenerative disc disease, and the non-severe impairments of hypertension and cubital tunnel syndrome.  (Tr. 18-19)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19)

Based on his review of Plaintiff's testimony and medical records, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 22)  In particular, the ALJ noted that Plaintiff's activities of daily living were not consistent with disabling levels of pain, her medications helped relieve her symptoms, and side effects of her medications were mild.  (Tr. 24)  At step four, the ALJ

determined that Plaintiff had the RFC to perform light work with the following additional limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes, and scaffolds. [Plaintiff] can frequently reach in all directions. [Plaintiff] should avoid concentrated exposure to extreme cold and excessive vibration. [Plaintiff] should avoid moderate exposure to operational control of moving machinery and exposure to hazardous machinery. [Plaintiff] should avoid unprotected heights. [Plaintiff] is further limited to simple, routine, and repetitive tasks.

(Tr. 21)

Based on the vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform any past relevant work but had the RFC to perform other jobs that existed in significant numbers in the national economy.  (Tr. 26–27)  Specifically, the ALJ found that Plaintiff could perform the jobs of retail clerk, dining attendant, and fast-food worker.  (Tr. 27)  The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 28)

## V.  Discussion

Plaintiff claims that substantial evidence did not support the ALJ's decision because the ALJ erred in (1) weighing the opinion evidence and (2) assessing Plaintiff's subjective complaints. [ECF No. 19]  The Commissioner counters that the ALJ properly weighed the medical opinion evidence and considered Plaintiff's subjective complaints.  [ECF No. 22]

### A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's

decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.   Medical opinion evidence

Plaintiff argues the ALJ improperly weighed the medical evidence by assigning too little weight to the opinion of Plaintiff's rheumatologist Dr. Ghosh and too much weight to the opinion of the non-examining state agency consultant, Dr. Threlkeld.  [ECF No. 19]  In response, the Commissioner asserts that the ALJ evaluated both opinions in accordance with agency regulations. [ECF No. 22]

A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."[5] Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  Even if the opinion is not entitled to

---

[5] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the SSA will consider all medical opinions according to several enumerated factors, the "most important"

controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight.  Id.  This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians.  See 20 C.F.R. § 404.1527(c); Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991).  "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as [a] whole."  Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (quoting Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007)).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight:  length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization.  20 C.F.R. § 404.1527(c).  Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation."  Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Ghosh completed a medical source statement (MSS) for Plaintiff in April 2018, entitled "Arthritis Residual Functional Capacity Questionnaire."  (Tr. 680-86)  Dr. Ghosh diagnosed Plaintiff with inflammatory arthritis, sciatica, fibromyalgia, anxiety, insomnia, and trochanteric bursitis.  (Tr. 680)  He stated that Plaintiff's prognosis was "stable" and her symptoms included: "dull pain, daily, [increased] by exertion, moderate to severe at times," sensory changes "in the hands at times," impaired sleep, and muscle spasms in the lower back.  (Tr. 680)  Dr. Ghosh opined

---

being supportability and consistency.  20 C.F.R. § 404.1520c.  Plaintiff filed her application in 2016, so the previous regulations apply.

that Plaintiff's pain would "frequently" interfere with her attention and concentration, her anxiety affected her pain, and she could tolerate "moderate stress."  (Tr. 681)  Where he was asked to identify any side effects of Plaintiff's medications, Dr. Ghosh wrote, "narcotics."  (Tr. 682)

In regard to Plaintiff's functional limitations, Dr. Ghosh estimated that Plaintiff could: walk one city block without rest or severe pain; sit for two hours at a time before needing to change positions; stand in one place for forty-five minutes at a time; and sit for a total of four hours and stand or walk for less than two hours in an eight-hour workday  (Tr. 682)  Dr. Ghosh stated that Plaintiff did not require "periods of walking around" or "a job which permits shifting positions at will from sitting, standing or walking," but she would need to take four fifteen-minute, unscheduled work breaks to "sit quietly" during an eight-hour workday.  (Tr. 683)

Dr. Ghosh opined that Plaintiff could:  occasionally climb stairs; rarely lift and carry less than ten pounds; and never lift and carry more than ten pounds or twist, stoop/bend, crouch, or climb ladders.[6]  (Tr. 684)  Dr. Ghosh noted that Plaintiff had "significant limitations in doing repetitive, reaching, handling or fingering" and estimated that Plaintiff could:  use her hands to grasp, turn, and twist objects for twenty-five percent of the workday; use her fingers for fine manipulations for twenty-five percent of the workday; and use her arms for reaching (including overhead reaching) ten percent of the workday.  (Id.)  Finally, Dr. Ghosh stated that Plaintiff's impairments would "produce 'good days' and 'bad days'" and cause her to be absent from work about four days per month.  (Tr. 685)

After reviewing Dr. Ghosh's treatment records and MSS, the ALJ assigned the MSS "little weight" because it was "not consistent with or supported by the medical evidence of record."  (Tr.

_____

[6] The MSS defined "rarely" to mean one to five percent of an eight-hour workday, "occasionally" to mean six to thirty-three percent of an eight-hour workday, and "frequently" to mean thirty-four to sixty-six percent of an eight-hour workday.  (Tr. 684)

25)  In particular, the ALJ found that the record contained "no objective medical evidence supporting manipulative limitations for the claimant" and Plaintiff's degenerative disc disease was not as limiting as Dr. Ghosh stated in the MSS.  (Tr. 25-26)  The ALJ also observed that Plaintiff's "medication was working to control her pain negating the need for the claimant to miss four days a month of work due to her impairments."  (Tr. 26)

Plaintiff challenges the ALJ's finding that the evidence did not support the manipulative limitations identified by Dr. Ghosh, arguing that Dr. Ghosh "document[ed] several complaints of hand pain, as well as tenderness and swelling in the MCPs, PIPs and wrists."  [ECF No. 19 at 5 (citations to record omitted)]  Plaintiff also points to the November 2013 cervical MRI, which showed:  C5-6 narrowing and right protrusion and spur encroaching on the neural foramen; and C6-7 moderate edema and left neural foraminal spurring and possibly small extrusion encroaching on the neural foramen.

A review of Plaintiff's medical records reveals that she consistently complained of moderate dull pain in her hands between September 2015 and August 2016, and physical examinations revealed mild tenderness with either trace or no swelling in the hands and +1 tenderness of the cervical spine.  However, these symptoms and signs resolved in November 2016.  Throughout 2017, Plaintiff reported that her hands and other joints were "fine," and Dr. Ghosh noted no tenderness or swelling in either the cervical spine, hands, or wrists.

In January and March 2018, Plaintiff again complained of moderate dull pain in her hands and Dr. Ghosh noted mild tenderness without swelling.  Dr. Ghosh adjusted Plaintiff's medications in March 2018.  In April 2018, Plaintiff reported her hands were "fine," but she complained of moderate dull pain in her neck, and Dr. Ghosh noted 1+ tenderness in the cervical spine.

16

Plaintiff's medical records reflect that, at the majority of Dr. Ghosh's examinations, he noted no abnormalities in Plaintiff's hands and, on the occasions that he did, the tenderness never exceeded 1+ and swelling was, at most "trace."   Likewise, the tenderness in Plaintiff's cervical spine was never more than 1+.   The relatively mild objective findings relating to Plaintiff's hands and cervical spine, and the fact that Plaintiff's hand pain was resolved in April 2018, did not support Dr. Ghosh's opinion that Plaintiff could use her hands and fingers for gross and fine manipulation only twenty-five percent of the workday and reach only ten percent of the workday. Furthermore, Dr. Ghosh stated on the MSS that Plaintiff's symptoms included sensory changes in the hands and muscle spasms, but his notes contained no references to muscle spasms and he mentioned loss of sensation (in Plaintiff's small right finger) only once.   "An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes."   Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) (quoting Davidson v. Astrue, 578 F3d 838, 843 (8th Cir. 2009)).   See also Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) ("[W]e have upheld [the] decision to discount a treating physician's [statement] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records o[f] treatment nor supported by any objective testing or reasoning.") (alterations in original and quotation omitted).

In support of her claim that the ALJ erred in assigning Dr. Ghosh's opinion little weight, she points out that Dr. Ghosh treated Plaintiff regularly from 2013 to 2018 and, during that time, he "performed injections throughout [Plaintiff's] body in attempts to decrease [P]laintiff's pain" and prescribed narcotic pain medications.   However, the ALJ considered the length and nature of the treatment relationship in his decision and found that Dr. Ghosh's treatment records undermined the opinion expressed in the MSS.   In addition to finding that Dr. Ghosh's medical records did not

support the manipulative limitations, the ALJ determined that Plaintiff's mild degenerative disc disease did not render her disabled, but rather limited her to light work.  Finally, the ALJ found that Plaintiff's pain responded to medication.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  Renstrom, 680 F.3d at 1066 (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)).

Importantly, the ALJ did not entirely discount Dr. Ghosh's opinion.  Rather, the ALJ found that Plaintiff had the RFC to perform a limited range of light work.  The ALJ accounted for the impairments affecting Plaintiff's arms and hands by including in the RFC limitations to frequent reaching in all directions and no climbing ladders, ropes, or scaffolds.  Upon review, the Court finds that the ALJ properly evaluated Dr. Ghosh's medical opinion and provided "good reasons" for assigning it little weight.

Plaintiff also argues the ALJ erred in assigning "great weight" to the opinion of Dr. Threlkeld, a state agency non-examining consultant.  More specifically, Plaintiff contends that Dr. Threlkeld's opinion was not entitled to great weight because it was rendered "almost two years prior to the hearing and appears to be based upon three visits with Dr. Ghosh and cervical and lumbar MRI."  [ECF No. 19 at 5]

Plaintiff correctly asserts that the opinions of non-examining or consultative sources do not, by themselves, constitute substantial evidence on the record as a whole.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010).   At the same time, however, the Social Security regulations explicitly provide that state agency consultants are  "highly qualified ... experts in  Social Security disability evaluations" and that ALJs "must consider" their findings as medical opinion evidence.  20 C.F.R. §§ 404.1513(c), 404.1527(e).  See also Mabry, 815 F.3d 386, 391 (8th Cir. 2016) (holding that it

was proper for the ALJ to rely on the opinion of the state agency consultant where it was consistent with other evidence).

Dr. Threlkeld completed a physical RFC assessment based on Plaintiff's medical records in July 2016. (Tr. 70-72) Dr. Threlkeld reviewed Drs. Shah's and Ghosh's treatment records and the November 2013 MRI, and he noted Plaintiff's medications, diagnoses, and clinical signs through May 2016. Based on those records, Dr. Threkeld opined that Plaintiff could: occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop/bend, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (Tr. 71) Dr. Threlkeld stated that Plaintiff had no manipulative limitations, but her ability to push and/or pull with upper and lower extremities was limited, and she must "avoid concentrated exposure" to extreme cold, vibration, and hazards. (Tr. 71-72)

In his decision, the ALJ stated that Dr. Threlkeld was "recognized as an individual familiar with Social Security disability regulations and possess[es] significant program knowledge." (Tr. 25) The ALJ found that Dr. Threlkeld's opinion was "consistent with and supported by the medical evidence." (Id.) More specifically, the ALJ stated that Plaintiff's: "degenerative disc disease at L5-S1with mild foraminal narrowing supports the claimant should be limited to light work with the postural limitations opined by Dr. Threlkeld"; "positive straight leg raise testing throughout the record supports the claimant should be limited to light work with the postural limitations" identified by Dr. Threlkeld; and "12/18 positive tender points support the postural and environmental limitations opined by Dr. Threlkeld." (Id.)

Dr. Threlkeld referenced Plaintiff's November 2013 MRI and three of Dr. Ghosh's treatment records, the most recent of which was dated two months prior Dr. Threlkeld's July 2016

evaluation, and he explained how those records supported the ability to perform light work with various postural and environmental restrictions.  See Brandes v. Colvin, No. 4:15-CV-1737 NCC, 2017 WL 168457, at *8 (E.D. Mo. Jan. 17, 2017) (state agency consultant was not required to detail every report he relied on in completing his analysis).  To the extent Plaintiff challenges Dr. Threlkeld's opinion on the ground that it did not include later medical records, the Court's review of the record shows that Dr. Threlkeld's opinion was consistent with the medical evidence as of his evaluation.  See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007).

The Court notes that Plaintiff does not identify any subsequent medical records that might have changed Dr. Threlkeld's assessment.  Indeed, Plaintiff's pain symptoms and treatment with injections and medications remained consistent after Dr. Threlkeld's July 2016 review of Plaintiff's medical records.  Plaintiff did not seek treatment from other specialists and the results of his February 2017 lumbar MRI were unchanged from November 2013.  Accordingly, the timing of Dr. Threlkeld's opinion did not render it deserving of less weight.

Plaintiff asserts that the ALJ improperly based the RFC determination on the opinion of a non-examining state agency doctor.  The Court's review shows, however, that the ALJ did not rely solely on Dr. Threlkeld's decision and sufficiently considered Plaintiff's medical records in assessing her RFC.  See e.g., Mabry v. Colvin, 815 F.3d at 390-91.   The ALJ did not err in assessing Dr. Threlkeld's opinion, along with the evidence of record as a whole, and assigning it great weight.

### C.  Subjective Complaints

Plaintiff claims the ALJ improperly discounted her subjective complaints.   More specifically, Plaintiff asserts that the ALJ:  (1) mischaracterized and relied too heavily on Plaintiff's activities of daily living; and (2) did not discuss the Polaski factors. [ECF No. 19]  The

Commissioner counters that the ALJ properly "considered a number of factors, including the medical findings in the record, Plaintiff's efforts to pursue treatment, and the effectiveness of treatment, when weighing her subjective complaints." [ECF No. 22 at 8]

An ALJ must evaluate the credibility of a claimant's subjective complaints before determining his or her RFC. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007). The Eighth Circuit requires that an ALJ consider the following factors when assessing a claimant's subjective complaints:  1) the claimant's daily activities; 2) the duration, intensity, and frequency of the pain; 3) precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. Renstrom, 680 F.3d at 1066. "Because the ALJ [is] in a better position to evaluate credibility, [a court] defer[s] to [the ALJ's] credibility determinations as long as they [are] supported by good reasons and substantial evidence." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).

Here, the ALJ provided several reasons for his finding that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms … are inconsistent with the medical evidence of record." (Tr. 22)  For example, the ALJ discussed Dr. Ghosh's clinical findings, which often included 1+ tenderness in her spine and positive straight leg raise testing at ninety degrees, but rarely included findings of joint tenderness and/or swelling in the hands.  Although Plaintiff stated in her function report that her "hands, fingers and feet fall asleep and go numb," Dr. Ghosh

21

regularly noted that Plaintiff denied numbness, tingling, or weakness in the legs. Nor did Dr. Ghosh record restricted ranges of motion, abnormal gait, reduced muscle strength, or decreased sensation. Finally, Plaintiff's most recent MRI showed only mild disc degeneration at L5-S1 resulting in mild foraminal narrowing. An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." Gonzales, 465 F.3d at 895 (quotation omitted). See also Goff v. Barnhart, 421 F.3d 785, 792–93 (8th Cir. 2005) (ALJ properly considered unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

The ALJ also found that Plaintiff's allegations of disabling pain were less credible because she frequently informed Dr. Ghosh that her medications were helping. As previously discussed, Dr. Ghosh's treatment records reflect extended periods of time during which Plaintiff did not complain of hand or neck pain, further demonstrating that her medications were effective. "Evidence of effective medication resulting in relief ... may diminish the credibility of a claimant's complaints." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). See also Renstrom, 680 F.3d at 1066.

Finally, the ALJ found that Plaintiff's activities of daily living undermined her allegations of disabling pain. Citing Plaintiff's testimony and function report, the ALJ noted that Plaintiff drove, shopped, did "a variety of household chores such as dusting and the dishes," and went "to church and restaurants regularly." (Tr. 23-24) Plaintiff is correct that an ability to perform sporadic, light activities does not demonstrate an ability to perform full-time, competitive work. Wagner, 499 F.3d at 851; Hogg v. Shalala, 45 F.3d 276, 278–79 (8th Cir. 1995). However, daily activities that are inconsistent with a claimant's subjective reports may support an adverse determination regarding the credibility of a claimant's allegations of disabling pain. See McDade,

720 F.3d at 998; Goff, 421 F.3d at 792 ("[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.") (quotation omitted).

Plaintiff argues that the ALJ overstated Plaintiff's activities to perform certain tasks.  For example, Plaintiff testified that she could "maybe dust" and required breaks when washing "a lot of" dishes.  In her function report, Plaintiff stated that she needed help putting on her bra, showered only using a chair, and could not shave her legs, wipe, or open pill bottles.  (Tr. 227-34)  Even if Plaintiff required more help or more breaks than the ALJ acknowledged in his decision, it was not unreasonable for the ALJ to consider her ability to perform them along with other relevant factors in assessing the credibility of her allegations of pain.  See Delmater v. Berryhill, 2:16-CV-70 SPM, 2018 WL 1508868, at *10 (E.D. Mo. Mar. 27, 2018).

Furthermore, other evidence in the record supported the ALJ's finding that Plaintiff's activities of daily living undermined her subjective complaints.  Dr. Ghosh regularly noted that Plaintiff was able to perform all basic activities of daily living.  Additionally, Dr. Ghosh's records of 2017 reflected Plaintiff reported:  no difficulty turning on and off faucets; no difficulty or "some difficulty" lifting a full cup to her mouth; and only "some difficulty" walking outdoors on a flat ground and getting in and out of cars and busses.[7]  (Tr. 586, 590, 597, 604)  An ALJ may discount a claimant's subjective complaints of disabling impairment if they are inconsistent with her activities of daily living.  See McDade, 720 F.3d at 998.

To the extent the ALJ did not specifically discuss each Polaski factor, the Court notes that an ALJ is "not required to discuss methodically each Polaski consideration, so long as he

---

[7] Plaintiff stated that she could perform the following activities "with much difficulty":  dress herself, including tying shoelaces and fastening buttons; wash and dry her body; bend down and pick up clothing from the floor; participate in recreational activities and sports; and walk two to three kilometers.  (Tr. 586, 590, 597, 604)

acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." McDade, 720 F.3d at 998 (alterations in original) (quoting Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  Here, the ALJ pointed to objective medical evidence, the effectiveness of medication in controlling Plaintiff's pain, and Plaintiff's activities of daily living, all of which supported the ALJ's determination regarding the severity of Plaintiff's symptoms.

The Court therefore finds the ALJ properly considered the factors set forth in Polaski and determined that the evidence in the record failed to support greater limitations than those included in the RFC. Because the ALJ's determination to discredit Plaintiff's subjective complaints is supported by good reasons and substantial evidence, the Court defers to the ALJ's determination.  See, e.g., Renstrom, 680 F.3d at 1067; Gonzales, 465 F.3d at 894.

## VI.  Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of November, 2020